## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

--------------------------------------------------------

ELAINE WANG,                                  :
                                              :
                    Plaintiff,                :     Case No. _____
                                              :
v.                                            :     **COMPLAINT FOR VIOLATIONS OF**
                                              :     **SECTIONS 14(e), 14(d) AND 20(a) OF**
                                              :     **THE SECURITIES EXCHANGE ACT**
FIVE PRIME THERAPEUTICS, INC.,                :     **OF 1934**
WILLIAM R. RINGO, FRANKLIN M.                 :
BERGER, KAPIL DHINGRA, PEDER K.               :
JENSEN, GARRY NICHOLSON, CAROL                :     **JURY TRIAL DEMANDED**
SCHAFER, LORI LYONS-WILLIAMS, and             :
THOMAS CIVIK,                                 :
                                              :
                    Defendants.               :
--------------------------------------------------------

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.       This is an action brought by Plaintiff against Five Prime Therapeutics, Inc. ("Five

Prime" or the "Company") and the members of Five Prime's board of directors (the "Board" or

the "Individual Defendants" and collectively with the Company, the "Defendants") for their

violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the

"Exchange Act"), in connection with the proposed acquisition of Five Prime by affiliates of Amgen

Inc. ("Amgen").

2.       Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the

"Solicitation Statement") to be filed on March 18, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to the Company's stockholders. The Solicitation Statement recommends that the Company's stockholders tender their shares in support of a proposed transaction whereby Franklin Acquisition Sub, Inc. ("Purchaser"), a wholly-owned subsidiary of Amgen, will purchase all of the issued and outstanding shares of the Company stock at $38.00 per share (the "Tender Offer"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated March 4, 2021 (the "Merger Agreement"), Purchaser will merge with and into the Company, with Five Prime continuing as the surviving corporation and a wholly-owned subsidiary of Amgen (the "Proposed Transaction"). In accordance with the Merger Agreement, Merger Sub commenced the Tender Offer to acquire all of Five Prime's outstanding common stock, which will expire on April 15, 2021.

3.     Defendants have now asked Five Prime's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Five Prime's financial projections relied upon by the Company's financial advisor, Lazard Frères & Co. ("Lazard"), in its financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Five Prime stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the Tender Offer.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Five Prime's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendant Five Prime is incorporated in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Five Prime common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant William R. Ringo has served as a member of the Board since October 2014 and as the Chairman of the Board since January 2019.

11.     Individual Defendant Franklin M. Berger has served as a member of the Board since September 2010.

12.     Individual Defendant Kapil Dhingra has served as a member of the Board since December 2015.

13.     Individual Defendant Peder K. Jensen has served as a member of the Board since July 2011.

14.     Individual Defendant Garry Nicholson has served as a member of the Board since May 2017.

15.     Individual Defendant Carol Schafer has served as a member of the Board since May 2019.

16.     Individual Defendant Lori Lyons-Williams has served as a member of the Board since June 2019.

17.     Individual Defendant Thomas Civil has served as a member of the Board, President, and Chief Executive Officer since April 2020.

18.     Defendant Five Prime is incorporated in Delaware and maintains its principal offices at 111 Oyster Point Boulevard, South San Francisco, California 94080.  The Company's common stock trades on the NASDAQ Exchange under the symbol "FPRX."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.    **The Proposed Transaction**

21.    Five Prime, a clinical-stage biotechnology company, focuses on the discovery and development of innovative protein therapeutics.  The Company's product candidates comprise Bemarituzumab, an antibody that inhibits fibroblast growth factor receptor 2b, or FGFR2b, which is in Phase 3 clinical trials to treat patients with gastric or gastroesophageal junction and GEJ cancer; and FPA150, a CD8 T cell checkpoint inhibitor antibody that is in Phase 1a/1b clinical trial that targets B7-H4 in various cancers, as well as FPT155, a soluble CD80 fusion protein, which is in Phase 1a/1b clinical trial that enhances co-stimulation of T cells through CD28. Its product candidates also include Cabiralizumab, an antibody that inhibits colony stimulating factor-1 receptor that is in Phase Ia/Ib clinical trials for the treatment of various cancers in combination with Opdivo.  The Company's BMS-986258, an anti-T cell immunoglobulin and mucin domain-3 antibody, which is in Phase 1/2 clinical trial as a single agent and in combination with Opdivo in patients with advanced malignant tumors.  It has license and collaboration agreements with Bristol-Myers Squibb Company, GlaxoSmithKline LLC, INBRX 110 LP, UCB Pharma S.A., and Zai Lab (Shanghai) Co., Ltd.; and license agreements with Galaxy Biotech, LLC, BioWa, Inc. and Lonza Sales AG.  The Company was founded in 2001 and is headquartered in South San Francisco, California.

22.    On March 4, 2021, the Company announced the Proposed Transaction:

THOUSAND OAKS, Calif. and SOUTH SAN FRANCISCO, Calif., March 4, 2021 /PRNewswire/    -- Amgen (NASDAQ:    AMGN)    and Five    Prime Therapeutics (NASDAQ: FPRX), a clinical-stage biotechnology company focused on developing immuno-oncology and targeted cancer therapies, today announced an    agreement    under    which Amgen will    acquire Five    Prime Therapeutics for $38.00 per share in cash, representing an equity value of approximately $1.9 billion. This acquisition adds Five Prime's innovative pipeline to Amgen's leading oncology portfolio.

- Five Prime's lead asset, bemarituzumab, is a first-in-class, Phase 3 ready anti-FGFR2b antibody with positive data from a randomized, placebo-controlled Phase 2 study in frontline advanced gastric or gastroesophageal junction (GEJ) cancer. Bemarituzumab targets FGFR2b, which has been found to be overexpressed in approximately 30% of patients with non-HER2 positive gastric cancer, as well as other solid tumors.

- The bemarituzumab Phase 2 FIGHT trial demonstrated clinically meaningful improvements in progression-free survival (PFS), overall survival (OS) and overall response rate (ORR) in the frontline treatment of patients with advanced gastric or GEJ cancer. Additional analysis showed a positive correlation between efficacy and expression of FGFR2b on tumor cells, confirming both the importance of the FGFR2b target and the activity of bemarituzumab against this target.

- This correlation suggests that FGFR2b could play a role in other epithelial cancers, including lung, breast, ovarian and other cancers.

- The acquisition of Five Prime also supports Amgen's international expansion strategy. Gastric cancer is one of the world's most common forms of cancer and is particularly prevalent in the Asia-Pacific region, where Amgen expects to generate significant volume growth in the coming years. Amgen plans to leverage its presence in Japan and other Asia-Pacific markets to maximize bemarituzumab's potential. In addition, as part of this transaction, Amgen will receive a royalty percentage on future net sales in Greater China ranging from the high teens to the low twenties from a pre-existing co-development and commercialization agreement between Five Prime and Zai Lab (Shanghai) Co., Ltd.

- Five Prime's additional innovative pipeline programs complement Amgen's efforts to bring meaningful therapies to oncology patients.

"The acquisition of Five Prime offers a compelling opportunity for Amgen to strengthen our oncology portfolio with a promising late-stage, first-in-class global asset to treat gastric cancer," said Robert A. Bradway, chairman and chief executive officer at Amgen. "We look forward to welcoming the Five Prime team to Amgen and working with them to leverage our best-in-class monoclonal antibody manufacturing capabilities to supply additional clinical materials, as well as expanded production quantities, to realize the full potential of bemarituzumab for even more patients around the world as quickly as possible."

"This is an exciting day for patients who may one day benefit from the promise of bemarituzumab and our full pipeline. I'm so proud of the Five Prime team and the science we've pioneered," said Tom Civik, president and chief executive officer of Five Prime. "We see tremendous complementarity between the two companies. Amgen has global reach, world-class resources, and they share our deep passion for science and commitment to patients. I have full confidence that Amgen is the right company to work with us to bring our innovative cancer treatments to patients and to achieve our mission to rewrite cancer."

**Transaction Terms**

Under the terms of the merger agreement, which was approved by the Boards of Directors of both companies, Amgen will commence a tender offer to acquire all of the outstanding shares of Five Prime's common stock for $38.00 per share in cash. Following the completion of the tender offer, a wholly-owned subsidiary of Amgen will merge with Five Prime and shares of Five Prime that have not been tendered and purchased in the tender offer will be converted into the right to receive the same price per share in cash as paid in the tender offer (other than shares held by stockholders who properly demand and perfect appraisal rights under Delaware law).

The transaction is expected to close by the end of the second quarter and is subject to customary closing conditions, including the tender of at least a majority of the outstanding shares of Five Prime's common stock and the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976.

Amgen reaffirmed its full-year outlook with Revenue guidance of $25.8 to $26.6 billion and non-GAAP EPS guidance of $16.00-$17.00.

Goldman Sachs acted as financial advisor to Amgen and Sullivan & Cromwell LLP as its legal advisor. Lazard acted as financial advisor to Five Prime and Cooley LLP as its legal advisor.

* * *

23.     It is therefore imperative that Five Prime's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.     The Materially Incomplete and Misleading Solicitation Statement**

24.     On March 18, 2021, Five Prime filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.  The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.

However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

25.     The Solicitation Statement omits material information regarding the Company's financial projections and the valuation analyses performed by Lazard, the disclosure of which is material because it provides stockholders with a basis to project the future financial performance of the target company, and allows stockholders to better understand the analyses performed by the financial advisor in support of its fairness opinion of the transaction.

*Omissions and/or Material Misrepresentations Concerning Five Prime Financial Projections*

26.     The Solicitation Statement fails to provide material information concerning financial projections by Five Prime management and relied upon by the financial advisor in its analyses. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisor with forming a view about the stand-alone valuation of the Company. Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that Five Prime management provided to the Board and the financial advisor. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.     The Solicitation Statement states that the Projections include information for calendar years 2021 through 2045 that was ***risk-adjusted to reflect Five Prime's management's estimate of the probability of technical, commercial and regulatory success for the Company's pipeline products. . . .***" The Solicitation Statement, however, fails to disclose what the estimate of the probability of success of the products are, and how that information affected the Projections as disclosed in the Solicitation Statement so that Five Prime's stockholders can evaluate the impact on the Projections themselves.

28.     For the Projections prepared by Company management for Five Prime for fiscal years 2021 through 2045, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: (a) EBIT; and (b) Unlevered Free Cash Flow, but fails to disclose: (i) the line items used to calculate the non-GAAP measures or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G.

29.     When a company discloses non-GAAP financial measures in a solicitation statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated.

Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

31.     Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Solicitation Statement not misleading.

_Omissions and/or Material Misrepresentations Concerning Lazard's Financial Analyses_

32.     With respect to Lazard's _Discounted Cash Flow Analysis_, the Solicitation Statement fails to disclose: (i) the basis for applying the range of discount rates from 10.0% to 12.0%; (ii) the range of terminal values of the Company; (iii) the basis for applying a range of terminal growth rates of (50%)-(10%); (iv) estimated net cash of the Company as of December 31, 2020; and (v) the number of fully diluted outstanding shares of the Company as of March 2, 2021.

33.     With respect to Lazard's _Selected Public Companies Analysis_, the Solicitation Statement fails to disclose the individual multiples and metrics for the companies observed by Lazard in the analysis.

34.     With respect to Lazard's _Selected Transactions Analysis_, the Solicitation Statement fails to disclose the individual multiples and metrics for the transactions observed in the analysis,

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

including the transaction values of the transactions, and the multiples of the target companies' five-year forward probability adjusted revenues.

35.     With respect to Lazard's *Premia Paid Analysis*, the Solicitation Statement fails to disclose the premia paid in each of the acquisitions observed and the transaction equity values implied for the target companies in the transactions.

36.     With respect to Lazard's prior banking relationship with the Company, the Solicitation Statement fails to disclose the fees paid to Lazard for the "certain investment banking services" provided by Lazard to Five Prime, and whether Lazard has provided any services to Amgen in the prior two years.

37.     In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender her shares, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

38.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

40.     Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer.  Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

41.     The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants.  It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisors' valuation analyses and resultant fairness opinion.

42.     In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act.  By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

43.     The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek other remedies.  In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

44.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

45.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT II**
**Violations of Section 14(d)(4) of the Exchange Act and**
**Rule 14d-9 Promulgated Thereunder**
**(Against All Defendants)**

46.     Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

47.     Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

48.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

49.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

50.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had

access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

51.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

52.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53.     The Individual Defendants acted as controlling persons of Five Prime within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Five Prime, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Five Prime, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Five Prime, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

56.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants

jointly and severally, as follows:

A.  Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

B.  Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.  Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.  Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 18, 2021

**RIGRODSKY LAW, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
Herbert W. Mondros (#3308)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: gms@rl-legal.com
Email: hwm@rl-legal.com

**OF COUNSEL:**

**MELWANI & CHAN LLP**
Gloria Kui Melwani
1180 Avenue of the Americas
New York, NY 100136
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*

16